Williams & Williams, Oxford, for defendants, Vereker and Bockover.

King & Young, Eaton, and Saylor & Bittle, Eaton, for defendant Bright.

### McNAIR v BRIGHT et

Ohio Appeals, 2nd Dist, Preble Co

No 81.  Decided July 6, 1934

a transfer of the title to the land embraced, by erasing the name of the grantee and inserting the name of another to whom the parties intend that title shall pass. The title of the grantee first named can be divested only by a separate deed." **13 O. Jur., 826.**

The actual title to the premises ·in, question is in Mrs. Richards for the reason that the same passed to her by a valid deed which has been established.

We were of ·opinion that the mortgage of Bright is valid as against the Richards; that Rogers cannot be heard to question the mortgage, because he knew of it, and that Vereker will not be heard to question the mortgage because he· also knew of it.

Inasmuch as Bockover must rely upon such title as he took from Vereker and as Vereker had no title, Bockover cannot be heard to question the mortgage of Bright and as McNair took no title from Bockover he (McNair) cannot question the mortgage.

When Mr. Rogers testified he ·expressly contradicted the Richards, Bright and Pults and brought new and revolutionary facts into the case. But he was not cross examined and no witness was offered to rebut his testimony.

If what Mr. Rogers says is true and it is not specifically denied by Mr. Bright, although contrary to his evidence formerly given, there can be no doubt that Mr. Bright had full knowledge at all times of the state of the title to the lot in question; that he knew that the deed was made from Andrews and wife to Vereker, although his (Bright's) mortgage was from Richards. Although it would not be necessary to so find to hold against Bright it is the testimony of Rogers that the mortgage which Bright seeks to foreclose in this action was to be released and the title was to pass to the real estate free and clear from encumbrances. Rogers further says that the title actually was in Bright, although it was carried in the name of Richards. Rogers' testimony however, is general respecting Bright's knowledge of the state of the title and that he, Bright, was the real owner of the real estate in Richards' name. John D. Pults corroborates Richards and establishes consideration for $800.00 of the $1200.00 note passing to Richards. Pults says that he wrote the check for $800.00 Bright to Richards, wrote the name of Bright upon the check, Bright not being able to write, that he, Pults, knew what the check was given for, that it was cleared through Pults' bank, The Farmers· State

## OPINION

### By THE COURT

This decision has repeatedly been delayed because of defendant Walter A. Rogers. When we first heard the case he was made a party defendant. Later he filed an answer and still later we felt that under the state of the record his testimony was essential.

The fact is, that before we had heard his statement on the witness stand this court had prepared an opinion, the conclusions of which were as follows: that defendant Rogers had mutilated the deed from Grover Andrews and wife to M. Jennie Richards by striking out the name of Richards and ·inserting the name of John Vereker.

"It is well settled that after title to real property has once passed by the due execution ·of a deed thereto, neither the grantor, the grantee, nor a third person can effect

Bank, and paid from the account of Bright and the cancelled check is produced, identified and offered in evidence. Pults also identifies the $1200.00 note which the Richards' mortgage is given to secure.

Rogers also says that he never owned the college corner lot. In this testimony he is contradicted by Pults, Mr. and Mrs. Richards, James Bright and Carl Thompson. The specific nature of the witnesses whose testimony is contradictory of Rogers is more convincing than the general conclusions of Rogers.

Much is said in the brief of counsel for Vereker and Bockover respecting Bright's knowledge of Richards' failure to record deed from Andrews and of his knowledge of Vereker's infirmity of title. When Bright was on the stand there was no cross examination respecting his partnership with Richards nor as to his good faith in taking the mortgage or which would test the claim that Bright held title to the property in Richards' name or that he knew Richards' deed had not been recorded or of the mutilation of the deed. If the record would support these conclusions we would not recognize Bright's mortgage, but a most careful reading fails to disclose proof of bad faith on the part of Bright or such negligence on his part as would require a court of equity to deny him his rights under his mortgage.

It is interesting to note that upon the deed Richards to Rogers of date, January 19, 1925, the name J. C. Bright appears as one of the witnesses to the signature of the Richards. Mr. Bright testifies that he cannot write and in this he is supported by Mr. Pults. Mr. Bright also says he was requested to act as a witness to the deed from Andrews to Richards, but did not act because he could not write.

It is urged that under the Recording Acts, Bright should not be heard to assert his mortgage against the McNair property because Richards failed to record his deed from Andrews. In the situation presented in this case it should be noted that when Bright took his mortgage from Richards, Richards had title, though the deed was not recorded. Vereker, though not charged with knowledge of title, by reason of record, was upon notice that the deed by which he claims title was irregular. He knew that he was not buying the real estate from Andrews and was not claiming immediately from Andrews. Though he may not have had knowledge of the full significance of the mutilation of the deed which he took he is charged with the knowledge that to take title he must secure a valid deed from his immediate grantor. The instrument under which he took was a void instrument and title never passed to him. Whether there was a deed made from Andrews to Richards, then from Richards to Rogers, as Richards says or from Andrews to Richards and then by change in the deed of the name of the grantee to Vereker makes no difference in Vereker's title because he had no deed from Rogers, nor from Richards.

Vereker's knowledge is conclusively shown by his own testimony. At page 61 of the record in stating what occurred when he was given the deed, these questions were put and answers made:

"Q. You said a moment ago, I believe, when Rogers showed you that deed, that it didn't look good to you, and you asked him about it? A. Yes, sir.

"Q. And what was said at that time? A. He said Mr. Richards done a whole lot of his business that way.

"Q. What do you mean; what did that answer mean to you? A. It meant he carried papers this way, to save recording it he just changed the name; that is the way it meant to me, save the expense of recording it; that is the way I would figure it; he would just change the name, you know; that is the way it looked to me.

"Q. That is what you understood? A. That is the way I understood it.

"Q. That was before you had accepted the deed and closed up the transaction? A. Yes, sir."

And on page 65 of the record, the testimony of Alex Duvall, a witness for Mr. Vereker, wherein the witness is referring to the occurrence at the time the deed to Mr. Vereker was turned over to Vereker:

"A. * * * Mr. Shank wrote this mortgage himself, that is with the difference that Mr. Rogers had given on the house, and then after they changed deeds, Mr. Vereker said to Mr. Shank, 'Look over this title.' That is the first I knew of this changing proposition, right there, but he read it over and said, 'This deed has been changed;' but he passed it up as all right and all parties agreeable.

"Q. (By Mr. Williams, Sr.): Did Mr. Shank say anything about the deed being so changed? A. Yes.

"Q. And its relationship as to whether it was recorded or not before the change was made? A. He said, yes, sometimes they do that when they haven't recorded them;—I can't be real sure what I am

speaking about,—that where the deed was not recorded they were traders, it would save one recording, one round instead of two. He didn't say exactly whether it is right or wrong."

We are not certain in our conclusion that Rogers made the change in the deed under consideration. Respecting Vereker's knowledge of the mortgage, which Bright is seeking to foreclose, the evidence is not convincing and we are in considerable doubt although we believe, as did the trial court, that the weight of the evidence preponderates in favor of the claim that Vereker had actual knowledge of the Bright mortgage. If the determination of this case rested entirely upon the actual knowledge of Vereker of the mortgage, we might even go to the extent of requiring all the witnesses to again be brought before us for examination. In fact, there are many angles to this case which make it difficult to determine just where the truth is to be found. That there were irregularities commonly practiced by some of those who testified in making deeds, is evident.

In view of Mrs. Richards' testimony the only laches which can be charged against her is the failure to have her deed recorded. The infirmity in McNair's position in this cause is that, though the chain of record title was regular there was a mutilated and changed instrument of record. McNair, therefore, had no legal title. It is undisputed that there was a valid warranty deed from Andrews to Richards and the instrument offered in evidence, Exhibit 1, should be reformed as a deed conveying such title from Andrews to Richards. If the Richards were in court we would require them to make a deed to Rogers. However, this would not prevent Bright from foreclosing his mortgage.

Recurring to the testimony of Rogers to the effect that the witnesses who testified respecting his part in the deed, Andrews to Vereker had in mind a deed made from M. Jennie Richards and Ivan R. Richards to Walter B. Rogers for other property, than the real estate under consideration in this cause. This testimony does not seem probable in view of the fact that the original deed, the Andrews to the Richards, J. B. Exhibit 1, was dated May 8, 1926, and the further transaction respecting that instrument was on or about September 30, 1926, whereas the other deed, Richards to Rogers was made January 19, 1925, a year and four months before the earliest date relating to J. B. Exhibit 1.

We recognize the equities of McNair in this cause. We believe that he has an equitable title in the property under consideration but his equities rise no higher than those of Vereker. Rutgers v Kingsland et, 7 N. J. Eq. 178. We have examined the authorities cited in the splendid brief on behalf of all parties and particularly on behalf of defendants Vereker and Bockover. We have read and considered with care the Ohio cases cited but do not believe that they are controlling of the peculiar facts in this case.

The prayer of the petition of plaintiff that his title be quieted against the mortgage of defendant James C. Bright will be denied. The deed, plaintiff's Exhibit 1, Richards to Vereker, will be reformed as prayed in the cross petition of defendant Bright. The mortgage of defendant Bright will be ordered foreclosed, the sum due thereon being the amount found by computation from the terms of the note. The costs of this action will be assessed against the defendant Bockover because of the warranty in his deed to McNair. Decree accordingly.

HORNBECK, PJ, and BARNES, J, concur.